This is the last case of the morning, JAMA v. Esmor. This is the last case of the morning, JAMA v. Esmor. May it please the Court, good morning, Your Honors. My name is Rebecca Wood and I represent the appellants, Esmor and John Lima. I would like to reserve three minutes for rebuttal. That's great. Thank you, Your Honor. In Farrar v. Hobby, the Supreme Court announced a new standard for awarding attorney's fees in federal civil rights cases. A plaintiff who receives only nominal damages on a fee-eligible claim usually is not entitled to attorney's fees. After Farrar, to receive... Well, under Farrar, if you receive nominal damages, you are a prevailing party. That's correct, Your Honor. You are a prevailing party. Then you have to figure out... So there's a threshold entitlement because you're a prevailing party. You can seek them. Then it's a question of how much. That's correct, Your Honor, and that's not in dispute here. So after Farrar, to receive fees, the nominal damages party must demonstrate something more than that he's simply the prevailing party. He must show that his case is the rare or unusual one that achieves something more than the technical moral victory that is always part of being a nominal damages plaintiff. With respect to that fee-eligible claim... You're saying we can't consider the $100,000 as more than a technical prevailing here because it was on a non-fee-shifting claim. That's right, Your Honor, and for several reasons that I can go into. With respect to the $100,000 state law compensatory award, there, of course, was no fee-shifting provision under the state negligence provision. And the plaintiff's argument is that Farrar essentially does not bar their right to fees because she received that with respect to the separate state law negligence award, just because it was tried at the same time and because she argues it was somewhat similar to RFRA. We say there are at least two reasons why that's wrong, Your Honor. The first one is that the jury, this was a jury case, not a bench trial, the jury expressly determined that the RFRA award was independent from their award on the negligence claim. They were asked in the jury questionnaire, and this appears in the record on joint appendix page 241, was the amount of damages awarded on the RFRA claim included in the amount of damages awarded on any other claim? And the jury form listed the other claims, including negligence one, which was the $100,000, and they checked no quite clearly. Now, the court said you could only grant damages under one heading. Well, the court was quite clear, Your Honor. We think if you look at its instruction, it was quite clear that if they found that there were compensatory damages with respect to RFRA, they could not award $1. If Your Honors would, I would invite Your Honors to look at joint appendix 210, where the judge specifically instructs the jury, if you return a verdict for Ms. Jama on the RFRA claim, but she failed to prove compensatory damages, then you must award nominal damages. However, if you find actual injury with respect to the RFRA claim, you must award compensatory damages as I instructed you, rather than the nominal damages. So they were clearly instructed that if they found nominal damages, they should write a dollar, which is what they did. If they found compensatory damages, then they should not write $1. So we think that's quite clear. Okay. Let me ask something about the nature of the negligent hiring, negligent supervision evidence. Yes, Your Honor. Clearly, Judge Debevoise saw this as basically a wash. He saw the whatever happened there really was RFRA. What evidence other than religious-based conduct formed the basis for the negligent hiring, negligent supervision? Yes, Your Honor. There was significant evidence that the jury could have credited that had absolutely nothing to do with any kind of religious violation. I'll list some for Your Honors. For example, in joint appendix 147 through 148, there was evidence that the guard allegedly beat and kicked Ms. Jama, stepped on her finger. Excuse me, what? Beat and kicked Ms. Jama, stepped on her finger. There were allegations of physical abuse. There were also allegations of filthy conditions, spoiled food, ice on the walls, human waste, inadequate medical care, emotional and psychological abuse, such as having 24 hours with lights on so they couldn't sleep properly. So we don't know. Well, there is a verdict on RFRA. In other words, the jury found that there was an official policy of specific acts-based, religious-based conduct that was against the law. Well, it's not at all clear from the record, Your Honor, that it was an official policy. But that's what the instruction says it had to be, the policy. Well, with respect, Your Honor, there were several individual defendants who were listed, including Lima. And there were specific jury instructions that said that Lima was not a policymaking official. He was simply the assistant facility manager. But where's the instruction on RFRA, if you would find it? Substantial burden by reason of a policy. On page 197, Your Honor, of the joint appendix. Okay. And doesn't it say there had to be, knew or should have known that a substantial burden was being placed on her religious practices. So it was in the alternative. I'm sorry, Your Honor. Okay. They either adopted, okay, adopted a policy or procedure. It's an either or. That substantially burdened her. Or if they knew or should have known that a burden was being placed. Correct. And if one looks at the complaint as well, Your Honors, in paragraph 7 of the complaint, although there is a note about policy and practice, it was not in general as to other plaintiffs. It was as to this plaintiff in particular. But the verdict actually shows what they found, which was that only Lima was the only individual officer who was held liable to have violated RFRA. There were other officials, there were three of them, that the jury was instructed, this is joint appendix 198, were the corporate officials. Those were the folks with the final policymaking authority who were at headquarters. This is Slattery. This is McClure. He was not found liable of anything. And Staley. And there was an instruction by the court that they were the final policymaking officials. And the jury specifically on its verdict form said they were not guilty of having violated RFRA. Only Lima, who is the person on the ground who is taking the instructions from headquarters, was actually found liable. So would you agree that under the case law, if there were common facts and related theories as between the federal and the state claims, that in considering attorney's fees on the federal claim, you could look at the overall degree of success as to both claims? A couple of answers, Your Honor. As a general matter, we would say no. I think the Supreme Court has made clear that as a general matter, you only look to the fee-eligible claim. All of the cases for RFRA were only involving a federal claim. There is some legislative history. What's your case for that proposition, that when faced with this situation, and now maybe it's a unique fact pattern. It is, Your Honor. It is a unique fact pattern. Here you have clearly a RFRA violation. The jury has found RFRA violation and has awarded $100,000 for negligent supervision and hiring. If the jury did have, if these were related, and if you could find they were related, you're saying they couldn't take into account the hiring and supervision case? Your Honor, there are of course some Second Circuit and other cases that have suggested that where you have a circumstance where you have basically a little state Title VII, a little state RFRA, where there are identical requirements, and for some reason, I think that's what Your Honor is referring to, for some reason, correct, Your Honor, if for some reason the federal court did not actually give an actual determination as to the federal claim. For example, there's a constitutional avoidance principle or for some other principle such as mitigation. In those circumstances, some of the courts have said you might look to identical and completely overlapping state law claims to still allow them to have fee shifting. That is not our case in any way, shape, or form. The elements are different here. This is not, there is not a little state RFRA at issue here. Our case might be harder if there were. Here the elements were different. Ms. Woods, I collected from the record the events that I think all pertain to the RFRA violation. They are lack of privacy when using the bathroom and the shower facilities, unnecessary strip searches, insufficient food supplies consisting mostly of displacement, damage, and disrespect of religious property. They took the Koran. They had a dog deal with it. Deprivation by force of required religious garb. That's the chador that they were. And they confiscated food the Jama had saved to eat after sunset because her religion prescribed that. And they would not allow herself, they would not allow her to wash herself prior to prayer as was required. Now with all of those things before the jury, the jury comes back and says that it's only one dollar to which she's entitled and that these, the things that they have heard are not affected by the And so you would say that that supports your argument that they came back and they said there is nothing other than the religious violation. And that's worth a buck. Correct, Your Honor. She got a jury decision on them. They said you get one dollar, you get your moral victory, but that's all. You get no punitive damages with respect to all of the religious conduct. So you think that Judge Devevois' proportioning as he did was an error. Correct. It was an error. Even if we were to allocate, even if we were disposed, which I'm not saying we are obviously, to allocate some of the negligence acts to the RFRA acts, the fact remains you can't pull it out of the air the way Judge Devevois did. That's correct, Your Honor. This was a jury finding, not a bench trial. He can't supplant the jury's actual findings here. There were jury instructions that make it clear. Let me ask you something that's really out of line. If we were convinced that there was more money that should have been attributed or more actions attributed to the RFRA, and you were the district court judge, how would you have determined that? Now, Judge Devevois picked the 30 percent. He had one label for one and one label for the other. And if we were to remand it, what would the district court judge do? I'm very conscious of what the burdens that we impose upon the district court, having a heritage of that sort. Yes, Your Honor. And we think this case is far easier than that. There's no need to remand. There's a simple legal rule that we're asking for here, which is under Farrar, because there's nothing else that was awarded with respect to the eligible claim. If we remand it, he comes back with a dollar. And no attorney's fees. There's no reason to remand. The merits of this case are not up on appeal. The plaintiff has been paid her $1. All that's at issue here is the attorney fees. And the judge cannot apply to sort of use this terminology of award ratio and cost ratio we find rather arbitrary, frankly, particularly given the very clear jury instructions here. If there were less clear jury instructions, this would be a harder case perhaps. And if the state and federal claim were in fact interchangeable, but here there were additional requirements for RFRA, so you can't just back them back and forth without any standards at all. But, well, I mean, we have an abusive discretion standard from our standpoint. And if all of the testimony before Judge Debevoise as to the negligent hiring and the supervision and what these guards did, if 98% of what he heard that the guards did to her was religious-based animus, but the jury found that, yes, that religious-based animus was there, but they should have been supervised and they shouldn't have been hired. And the last clear chance, if you will, of dealing with this was the prison's fault, so that the most direct way of dealing with it would have been the supervision. The jury could have awarded the $100,000, and still the overall success would be that we do not allow this religious discrimination in our prisons. And I would think, based upon the jurisprudence, you could award fees. But, Your Honor, with respect, we would disagree, that there is certainly a strong degree of oversight that should be exercised, that discretion exercised here within judgment, within limits, in the sense of the Franklin case from the Supreme Court. It's not unbounded discretion. And so this really is a narrow legal issue that can be decided as a matter of law, and it was not appropriate for the district court to look behind. There's no need to speculate. And there is no proof, based on the very clear record, the jury's very clear verdict in this particular case. Maybe a different case would be harder. It's absolutely clear that they found that that particular conduct did not meet the additional requirements and different requirements of RFRA. I beg to differ. I don't think any of that is absolutely clear. And I would think that Judge Debois ought to address exactly why he said, well, guess what, really what they found was RFRA, because that's really what he found. He said they decided that this was tantamount to a RFRA verdict. And I would like him to explain. And if, in fact, that's what he believes they did find, I think he should have that discretion. With respect, Your Honor, we would say that given the very clear instructions here that the jury could not give any award with respect to that they had to hold separate the federal fee-eligible claim from the state law claim, there's no basis to cross that line in this particular case. They're just not interchangeable causes of action as a matter of law. And the instructions here are quite clear, that if the jury thought that there was religious violations, then they should have, they were required to, the jury language said must include that in your RFRA award. Go ahead. Couldn't you infer that the damages here were attributable to the RFRA claim because they found no liability under the Alien Tort Claims Act claim at all? In other words, go back to a question Judge Rendell asked earlier, and that is that the negligent supervision, hiring, retention, training, all has to be tied to something that the guards or those underneath, those being supervised, did that violate it in some way, a protected interest of Ms. Jama, either by deliberate indifference to a serious medical need or something else. But the only violation we know about is RFRA. No, Your Honor. I mean, with respect, Congress in 1988 enumerated specific federal statutes that have particular requirements. She had to meet those additional requirements in order to be awarded compensatory damages for RFRA. If they thought that there were violations that met the standard of RFRA, they could have awarded $100,000 of compensatory damages for RFRA. Then this would be a very straightforward case. Then the Fee-Shifting Statute would apply. What you can't do, Well, it applies. I mean, she's a prevailing party. It applies, Your Honor, but we would not be in the Farrar framework where we have to analyze whether she got something more on the federal claim itself. Well, but if you look at Farrar, I mean, most of the courts that cite it add in Justice O'Connor's opinion, which talks about overall degree of success and is, in fact, expansive. But, of course, Justice O'Connor is writing within the context of Farrar, which only involved federal fee-eligible claims. And it's the worst fact pattern you could ever have. But it is a stark fact pattern, to be sure, but here we It's a bit of an unusual fact pattern not to have a state law claim that essentially parallels the federal law claim. Certainly, in our case, it's merely a state negligence claim, a tort claim. So this may be a different case if there were actual parallel requirements. Ms. Wood, I know your time is up, but I gather that a good part, if not the whole part, of your argument is centered on the answer to the jury's interrogatory Do G. 2G. Was the amount of damages awarded on the Riffer claim included in the amount of damages awarded on any other claim? And, if so, which claims? Correct, Your Honor. And I notice on my verdict sheet, which I guess is a Xerox copy, that they had the ATCA claim and they said no. Correct, they found no liability at all on that, and that was not a fee-eligible claim anyway. Then they said the negligence claim number one, and some, they had inserted yes and then crossed it out and said no. Correct, Your Honor. Right? Yes. And then the negligence claim number two, there's no equivocation. It's all no. And so you say if the judge is going to go back and reject the jury's interrogatory, the interrogatory answer on the verdict, is that permissible? Can he go back and can a district court judge go back and say that their answer to this was wrong because I believe it's wrong? No, he can't. I mean, this was a jury trial. They gave an answer. It's a jury verdict. It was a jury verdict, and that's what the fees have to be based on. And, Your Honor, we would also invite, Your Honor, to join Appendix 232, where the jury is also asked this question, was the amount of damages awarded on the RFRA claim included in the amount of damages awarded on any other claim? Say that slowly, please. I apologize, Your Honor. It simply repeats the question in 2G, and they clearly answer no. So there's no scratch-out issue. They say no when they're asked. So there's no question that it was. There's no question on this record. This record is crystal clear. Are damages a matter of fact? As a general matter, calculating the amount of attorney's fees that are due, is that Your Honor's question? Are damages to be considered? Well, of course, this is not damages. There were no damages on the RFRA claim. This is the attorney's fee, which is collaterally subservient to the damages. Yes, Your Honor. And it's a very special framework under Farrar, we would urge. Also, just on note for the record, on 209, the jury was told, you must not award compensatory damages more than once for the same injury. Correct. And the first thing that they got to on the verdict form was RFRA, and they were instructed specifically, if there are compensatory damages for RFRA, you cannot order $1. But they met with the whole verdict form and said, you know, it really was because they didn't supervise the guards. That was the real question. Well, in order to prevail under RFRA, they would have had to show substantial burden on religion, which they did not hold as to the guards here. All right. We'll hear from you on rebuttal. Thank you. May it please the Court. My name is Justin Smith. I'm from the law firm of Debevoise & Plimpton. I'm with my co-counsel, Penny Venetis, from Rutgers Constitutional Litigation Clinic. Together we represent Plaintiff Apeleihawajama. Your Honor, as detailed in the record, the brief, and the District Court's opinion, while detained by appellants, Ms. Jama was subjected to — Talk into the microphone, please, Mr. Smith. Excuse me, Your Honor. Lift it up a little. While detained by appellants, Ms. Jama was subjected to abuse by, as Judge Debevoise found, sadistic guards that included violations of her religious rights. I'll discuss some of those acts shortly. Judge Garth, you mentioned a number of them during the proceeding argument. Yes, I mentioned a whole penalty of things that they did. And then they came back and she said, but we give no damages for that. How do you account for that? Well, Your Honor, I don't believe that's what the jury said. What did they say? Well, I think the critical point is the language that was read by Judge Rendell in the instructions, which is that they were specifically instructed that you may not award compensatory damages more than once for the same injury. For example, if Ms. Jama prevails on two claims and establishes a dollar amount for her injuries, you must not award her any individual compensatory damages on each claim if the two claims resulted in the same injuries. There was no way, as Judge Debevoise found, for the jury to make clear as to whether there was any overlap between the harm suffered. Therefore, therefore, the finding. Now, wait a minute. Didn't you agree to these interrogatory questions? Yes, Your Honor. Both we did and so did defendants. What do you mean there was no way for the district court to determine? They seem very clear to me. Your Honor, I don't believe that they are clear. I believe that they were instructed that they could not award the same damages twice on different claims for the same harm. Was there an exception taken to the form of the verdict form? No, Your Honor, but I don't believe the lack of exception would harm us. I think the result is simply that it was unclear. The jury verdict doesn't specify. To the extent it does specify, well, excuse me, it doesn't specify one way or the other. And that's why Judge Debevoise's finding, which is a factual finding entitled to clear error review, that 33 to 50 percent of the harm under the negligence claim could equally be attributable to the RIFA violations. Well, that comes from 33 to 50 percent. I mean, did you make that argument? Did you argue for an award ratio? No, we didn't, Your Honor. But Judge Debevoise, of course, lived with this case for 10 years. It was a 10-year litigation. He was there for the six weeks of trial. He heard all of the evidence, all of the facts mentioned by Judge Garth, and I would add to that fact the fact that Ms. Jama, in the course of prayer, was subjected to physical abuse. All of those facts would support a claim either under the Religious Freedom Restoration Act or under negligence. Isn't there a problem, though? The instruction that I read saying two things coming to the same injury. There's a problem here because the jury found nominal damages, which it was told to find if there was no injury. Isn't that right? Yes, it was, Your Honor. So you really can't say that they found that two things resulted in the same injury because they found, I mean, maybe they should have footnoted it and said, you know, we're not sure what to do here, but, you know, there was injury, but we award nominal because we can't award damages twice. Well, Your Honor, looking at the jury instructions, the instruction that my adversary pointed out is question 2G. I submit that that question does not resolve the issue. That question was, I'll read, was the amount of damages awarded on the RFRA claim included in the amount of damages awarded on the negligence claims? All that answer, and the answer, as you indicated, first was yes, then crossed out to be no. All that answer indicates is that the amount the jury awarded on the RFRA claim, $1, was not intended to compensate her on her negligence claims. It does not say anything about the converse. The only informative question on this matter, the jury actually skipped, as we detailed in our briefs, and they skipped pursuant to the instructions of the Court. The record is not clear. I again come back, but there was no exception to this. This was accepted by both parties. Am I correct? Yes, Your Honor. Now, I have, you can't possibly have more respect for Judge Devebois than I have. I served with him, and I knew him as an attorney, and as a district court judge, and as a matter of fact, he has his chambers only a spit and a throw from mine. And I think he's an absolutely fine judge, but I don't understand how you can change a jury's interrogatory verdict, which was approved by both parties and which is answered by the jury, and which seems to, at least to me, to resolve the question. Your Honor, I submit there is no change. There was no finding by the jury that contradicts Judge Debovois' factual finding that 33 to 50 percent of the harm under the, that was awarded under the negligence claims also reflected harm to Ms. Giamma's religious rights. There's no conflict. And in the absence of that. But is that finding really significant in terms of the ultimate decision? Didn't he simply make that as a way of checking for the reasonableness of the fees being awarded here? And he used an award ratio and a cost ratio and basically said, well, since the award ratio is higher than the cost ratio and the fees then will be reasonable, it will be a reasonable amount. Well, Judge Finasci, let me, let me put the answer to that question in some context by noting a couple preliminary facts. First of all, as Judge Rendell noted, we're here on abuse of discretion review. Okay? That's a deferential standard to the district court. Secondly, as was noted in the colloquy with my adversary, this, this is plainly covered by the statute. We have on the one hand an enumerated statute under 42 U.S.C. section 1988, and we have a prevailing party. There's no dispute. The statute covers it. Now. And the statute says actions or proceedings. In actions or proceedings. Yes. And this was, this was an, and there's no dispute that this was an action or proceeding to enforce one of the enumerated statutes. RFRA is an enumerated statute. Ms. Giamma is a prevailing party. So we're covered by the statute. We're in abuse of discretion framework. Now. Do you say he didn't abuse his discretion? Let me get, let me just, if I, if I may, I, I, he didn't abuse his discretion, but I also want, I don't want to elude the judge and ask his question, which is the importance of the facts. Given that we're in this framework, there's no prohibition on considering the related state claims by any court. No, no court, FRA doesn't prohibit it. As long as they are related. That's the key. We have under Hensley analysis, right, we need, we have the overall recovery is what is key. And that same language is then, is subsequently cited in FRA. And in that analysis, as long as we have a common core of facts, not identity as to facts, a common core of facts, or separately related legal issues, not identical legal issues, related legal issues. Now, as to the facts. Hensley involves only, only fee shifting claims. Hensley involves only fee shifting claims. Yes, Your Honor. And I don't say, don't say otherwise. And same with FRA. So they don't, they don't speak to this issue of, of state, of state claims. However. Bridges did speak. Bridges did. But there you have the identical legal theory, but you're with the state. Right. But identical legal would fall certainly within related. And there's nothing in Bridges that says it has to be identical. There's no discussion on that point whatsoever. Various other circuit courts also allow findings on, based on state law claims. Now, why are the facts important, Your Honor? I submit to you that the facts that Judge Garth mentioned, as well as the other fact that I mentioned, could be used to support either general harm or harm to religious rights. But you don't have to take my word for it. That's what Judge Debevoise found. Judge Debevoise found a substantial overlap. He found a common core of facts. That's what that finding did. It showed that there's a common core of facts that support the several claims. I understand that, but why, why does he have to make a, why do we have to be concerned with this award ratio he came up with? Doesn't that just muddy the waters? Well, I don't think it does muddy the waters. I think, in point of fact, it clarifies very specifically that in this case we do have a common core of facts. We're looking at the overall recovery. We have a common core of facts. Under the case of Aubin, it's for the district court in the first instance to determine the relationship between the fee-shifting claims on the one hand and the state claims on the other hand. It would have been easier if he said that at the outset, to say how the claims are related as compared to weighting and talking about the award itself. Again, I think there are two parts. You can have either common core of facts or you can have related claims. Either one is sufficient. Either one is sufficient. In fact, we have both here. Judge Debevoise, in particular, as was his right under Aubin and under the Sixth Circuit case of Dowling v. Litton loan servicing, it's the district court that determines the common core of facts. That finding is reviewed for clear error. Do the cases of Smith v. Robinson and Mayer v. Gagne help you or hurt you? Your colleague says that they help her, but I'm not so sure. No, Your Honor. Mayer v. Gagne was a Supreme Court case that determined it was appropriate to award a fee based solely on pendent non-civil rights claim, even if the fee-shifting claim, not only nominal damages, wasn't even decided. And there are courts following Mayer, specifically Aubin, specifically Millway, that say the plaintiff shouldn't be punished when the plaintiff would have decided in her favor, as we have here. So Mayer is certainly very much on our party's side. Do we need Judge Debevoise to explain a little more how he made the link between the negligent hiring supervision and RFRA so categorically? No, Your Honor. Again, his findings relate to the common core of facts. That's a factual finding. He lived with the litigation, as I mentioned, for ten years. He sat through the entire six-week trial. Excuse me. We just don't know if the evidence and the conduct, you know, was 90 percent religious or you're saying the 33 to 50, does it? He said it was. He listed the various facts. I mean, you know, he went through the various facts that Judge Garth mentioned and said, you know, these are the facts that support the claims. And point of fact, those facts would support either claim. That's evidence of the commonality of fact in this case. He did that, in his opinion. There's nothing to remand. It was very detailed. Do we know what totally unrelated? I mean, your colleague says there was the beating and kicked, stepped on a finger, physical abuse, filthy conditions. Do we know what conduct wasn't religiously related? Well, there certainly was conduct that was not religiously related. But in figuring common core of facts, if that was 90 percent of the conduct and 10 percent was religiously related, then don't you have a problem there? Well, no, I don't think you do, Your Honor, because, again, it's not identity of facts. It's a common core of facts. And, again, that's reviewed for clear error. When you're trying to allocate a percentage, I'm just thinking if this court were inclined to send it back to Judge Deveboy, would 29 percent be wrong? Would 31 percent be wrong?  But Judge Deveboy, in his opinion, assigned a particular percentage, therefore a particular amount, to one aspect and the other. Well, Your Honor, I would say that he didn't prescribe a particular amount. He certainly found 33 to 50 percent. Yeah. But that was not for any movement from the negligence relief to the RFRA relief. That was for the purpose of showing the common core. There was no shifting as between buckets. He said it was designed as compensation for 33, between 33 and 50 percent of the negligent claim award of $100,000 was designed as compensation for the RFRA-related injuries, which causes me to say, how so? Could you explain that? I'm not doubting. I just don't know. And maybe I'd allow him to do that. If it was designed, well, it wasn't designed as compensation, if the verdict sheet doesn't say it was. He's obviously figuring that based upon what he observed. But I think there's a different way of saying it. Yes, Your Honor. It's certainly a separate factual finding. And let me point out, there's nothing magical about 33 or 50 percent. The only effect that this has for the fee award, for the propriety of the fee award, is that these facts overlap sufficiently to form a common core, whether it's 33, whether it's 40. Suppose he said 90 percent and 10 percent. Suppose using that, Judge Debevoy, it's that I find 90 percent was attributable to RFRA, 95 percent attributable to RFRA. Could we possibly sustain that? I mean, you just picked it out of the air? Well, Your Honor, I really don't think you picked it out of the air. There was no ‑‑ it's not inconsistent with anything the jury found. Judge Debevoy is entitled to make findings of fact that are not inconsistent with the jury verdict. The only importance to attach to the number is insofar as it relates to the question of a common core, which is something that this Court and other courts look at routinely in other contexts. For example, the common nucleus of operative fact kind of question, in which there's no need for total congruity among facts. All you need is the core. Here we have the same time, the same place, the same actors, the same events, giving rise to liability simply under different theories. Thank you. Thank you, Your Honor. Thank you, counsel. You're addressing the reasonableness of the fees? Yes. Judge Garth, Judge Vandell, Judge Vanaski. My name is Penny Vanettis, and I'm here to address the reasonableness of the attorney's fees awarded by Judge Debevoy. This Court should affirm the total fee award. The standard of review, as Mr. Smith mentioned, is clear error. Judge Debevoy's fee award was not clearly erroneous under any analysis. Indeed, the Supreme Court in Hensley v. Eckhart reemphasized that appellate courts should give deference to district courts, and I'm going to quote from the Hensley opinion, discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate reviews of what essentially are factual matters. And this answers a question that Judge Garth had earlier. In Hensley, the Supreme Court instructs circuit courts to affirm fee awards as long as two conditions are met. The first is that the district court provides a concise but clear explanation of its reasons for the fee award. And the second is that the district court makes clear that it has considered the relationship between the amount awarded and the results obtained. Judge Debevoy has followed Hensley to the letter, and he's done both of the things instructed by the Supreme Court. Did he award 100% of the RFRA-related fees that you requested? He did, and that goes to the reasonableness standard. It's really the second prong where Judge Debevoy explains in great detail how he has considered the relationship between the amount of the fee awarded and the results obtained. As Mr. Smith said, and I'll quote from Judge Debevoy's opinion on page 9, he found, quote, that there is considerable evidence of the conduct of Esmore and Lima, the two defendants against whom the jury found for the RFRA violations, substantially burdened Jama's religious freedom such that, indeed, it is difficult to imagine that a significant portion of the jury's award was not based upon RFRA-related conduct. So the court raised earlier the question of was it 90%, was it 30%. I submit that that amount, it really is irrelevant. As Judge Vanasky, you raised that question several times. He found, Judge Debevoy made a factual finding that a significant portion of the jury's award was based on the RFRA claim, and he actually found it hard to believe that it wasn't. Based on that analysis, Judge Debevoy's award found that plaintiff's application for fees was eminently reasonable, and I can explain why that is. First of all, even though Judge Debevoy's found that the RFRA violations were 33% to 50% of the total award, plaintiffs didn't ask for 33% to 50% of their fees. We significantly reduced our request for fees. We asked for 100% compensation for work that we could specifically assign to preparing the RFRA claims, not only initially in the complaint, but throughout the course of this litigation all the way to trial. The defendants challenged the RFRA claims repeatedly, saying they were unconstitutional, that a corporation could not be sued for RFRA violations. All of these issues were litigated. Many of them were novel issues of law that were fully briefed. The RFRA claims, despite the many attacks, survived. We put in for 100% of compensation, particularly for my time, because I worked on them personally. But in areas where we were working on trial preparation and a number of other issues combined, we only asked for 18%, at least I asked for 18.4%, and there's a chart showing how Debevoy's and Plimpton broke it up, and for the trial preparation it was 18.4%. So we really did reduce it. I did not put in for any time devoted by students. And Judge Debevoy, who has been on the bench for 30 years and certainly knows how to slash fee applications, found that our fee application was eminently reasonable in every respect. Thank you very much. Thank you, counsel, for that argument. We'll hear from Ms. Wood. Just a couple of quick points, Your Honor. We need to go back to the fundamental point here, which is that we assume that juries follow their instructions. This isn't a different kind of case like Bridges, where the judge itself conducted a bench trial with respect to the Title VII issue and then had to reconcile what to do with an interchangeable little Title VII award by the jury. This is quite different. Our jury has made a finding here. Our jury was specifically instructed on Joint Appendix 210 that if it found compensatory awards for RFRA, it had to say so. If it did not find it, they had to award $1. What is the actual injury for the dog treating the Koran with disrespect or someone throwing a Koran in the wastebasket or someone taking food away? What's the actual compensable? How is a jury going to put a dollar figure on that? It could be a number of things. It could be psychological trauma, that sort of thing. They certainly tried to prove that up, and they failed. It could also be a showing that this was done with malice, in which case they would be entitled to punitive damages. They tried to prove that up, and they failed on that. So there certainly are other circumstances, which we acknowledge, not the case here, where one could get compensatory damages and punitive damages. And this is not a case where the plaintiff, if we look under Farrar, has done something more with this litigation, like get an injunction or get punitive damages or get a brand-new rule of law. There was certainly no finding to that effect by the judge here. This was simply an application by the jury. How would we write this opinion your way? I think it's quite simple here. There are some larger issues that one might have to grapple with in a different case, but here, where the jury was clearly instructed, we assume they followed their instructions. There was no objection to the instructions below or to the verdict form below. They were instructed that if they found compensatory damages for RFRA, they must say so, and if they find no compensatory damages, they must say $1. They said $1. Were you surprised by the answers to the interrogatories? No, Your Honor. You expected that. I was not trial counsel, Your Honor, so I certainly can't speak for trial. Well, I wasn't trial counsel either. Yes, Your Honor. I'm just curious to know what your reaction was when you saw that verdict form because it doesn't seem to accord to all of the evidence. I read you some portions of it. I think the most striking thing about that verdict form is that the key policymaking corporate officials who were alleged to have created those policies were not held to have violated RFRA. The other point I just wanted to get with quickly, if I could, Your Honor, is that this notion that if there is some shared common core of facts between the state finding and the federal finding, that's sufficient to do fee shifting. That would really swallow the rule, and I would just want us to step back for a minute and remind ourselves that we have to look at fee shifting against the well-established American rule. Of course, Alyeska Pipeline said that's as old as our history. 1988 is a narrow exception to that. Judge Rendell asked you a question, how would we write this up your way, and then how would we deal with the language from Hensley that says in some civil rights cases, the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories, and then they said later in that opinion, the district court should focus on the significance of the overall relief obtained by the plaintiff. How do we deal with that language in writing this up? With respect, I don't think one needs to take that on in the sense that that case is dealing simply with a fee-eligible claim to begin with. It doesn't confront the very different circumstance here. The only mention in that – We have a fee-eligible claim in that we find a violation of RFRA. Yes, Your Honor. And loads of the testimony had to do with anti-religious behavior. So in that instance, we just – we say, whoops. We look – we don't look at the fact there was a violation. We don't look at the fact that her rights were violated and that they did this. We're not reading Hensley on a blank slate. Farrar comes, of course, after Hensley, and Farrar narrows the universe in which to view that, and it narrows very significantly the district court's discretion. I'm sorry I didn't interrupt you. Doesn't the fact that the post-Bridges cases that you relied on out of the Second Circuit all involved situations where the plaintiff did not prevail on the fee-shifting claims make this case different from all those post-Bridges cases? Or they were avoided for some reason. For example, in Bridges itself, the court simply didn't reach it because of failure to mitigate. So that's not a case like this. I see my light's on. Thank you, Your Honor. Thank you, counsel. Very, very well argued. Counsel Debevoise, were you appointed for this case? Pro Bono. Pro Bono, thank you for taking it. We appreciate that. We make a policy of thanking counsel when they do that. It's important to help the court in this way, and we thank both counsel for a terrific argument. Thank you, Your Honor. Ask the clerk to recess court. Please rise. This court is at recess until 1 o'clock. Are we going to your chambers? Yeah, 21. You're 21-316. Yeah.